## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

SUFFOLK COUNTY WATER
AUTHORITY,

                            Plaintiff,

  **-against-**

THE 3M COMPANY (F/K/A MINNESOTA
MINING AND MANUFACTURING CO.);
BUCKEYE FIRE EQUIPMENT
COMPANY; CHEMGUARD INC.; TYCO
FIRE PRODUCTS LP; and NATIONAL
FOAM, INC.,

                      Defendants.

**Complaint for a Civil Case**

Case No. _____17-cv-6982_____

Jury Trial Demanded

**Table of Contents**

I. Introduction ........................................................................................................................... 1

II. Parties .................................................................................................................................. 3

III. Jurisdiction and Venue ...................................................................................................... 4

IV. Factual Allegations ............................................................................................................ 5

    A. PFOA and PFOS, Their Chemical Characteristics, and Risk in Groundwater ................. 5

    B. Defendants' Production of PFOA/PFOS and Commercialization of AFFF ..................... 6

    C. Defendants' Knowledge of Threats Posed by PFOA and PFOS ...................................... 8

    D. PFOS and PFOA Detected in the Affected Areas ......................................................... 10

    E. Treatment of PFOA and PFOS ...................................................................................... 13

V. Causes of Action ............................................................................................................... 13

    FIRST CAUSE OF ACTION
    Strict Products Liability for Defective Design .................................................................... 13

    SECOND CAUSE OF ACTION
    Strict Products Liability for Failure to Warn ..................................................................... 16

    THIRD CAUSE OF ACTION
    Negligence ........................................................................................................................ 18

    FOURTH CAUSE OF ACTION
    Public Nuisance ................................................................................................................. 19

    FIFTH CAUSE OF ACTION
    Private Nuisance ................................................................................................................ 21

    SIXTH CAUSE OF ACTION
    Trespass ............................................................................................................................ 22

VI. Prayer for Relief ............................................................................................................... 24

VII. Demand for Jury Trial ..................................................................................................... 25

# I.     Introduction

1.      Plaintiff Suffolk County Water Authority ("SCWA," "the Authority," or "Plaintiff") brings this action against 3M Company, Tyco Fire Products LP (successor-in-interest to Ansul Co.), Chemguard Inc., Buckeye Fire Equipment Company, and National Foam, Inc. (collectively, "Defendants") to recover the substantial costs necessary to treat and remove the contamination of its public drinking water wells by treating the water in those wells to eliminate contamination caused and/or created by Defendants' products; and to protect the public health, safety, welfare, and the environment.

2.      Defendants manufactured, marketed, and sold aqueous film-forming foam ("AFFF"), a firefighting product used to control and extinguish aviation, marine, fuel, and other flammable liquid fires. AFFF contains perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contains the precursors of PFOS and PFOA.

3.      PFOA and PFOS are toxic, not easily biodegradable, persistent in the environment, and pose a significant risk to human health and safety. PFOA and PFOS are potential carcinogens associated with a variety of illnesses and considered particularly dangerous for pregnant women and young children.

4.      Airports and bases operated by the U.S. Air Force and other branches of the military have used AFFF and other materials containing PFOA and PFOS for decades for firefighting and explosion drills. These sites have been linked to the widespread contamination of surface and groundwater, as well as public drinking water wells, with PFOA, PFOS, and other perfluorinated chemicals ("PFCs") throughout the country.

5.      AFFF has been used for almost 50 years at the Francis S. Gabreski Airport and the Gabreski Air National Guard Base in Suffolk County. During routine training exercises,

AFFF has been sprayed directly on the ground, allowing PFOS/PFOA to travel to the surrounding groundwater, causing contamination of various of SCWA's water supply wells, in various locations, in varying amounts, at various times.

6.      AFFF was also used for firefighting training activities at the Suffolk County Firematics Training Facility in Yaphank until May 2016, when Suffolk County was notified that New York State had classified the PFOA and PFOS in the foam as hazardous substances.

7.      Hawkeye Energy Plant, located in Greenport, is also a likely source of PFOS contamination. As a facility using kerosene as its primary fuel type, Hawkeye Energy Plant likely has utilized a foam fire extinguishing system, similar to or the same as the AFFF used in airports.

8.      SCWA is responsible for providing potable water to approximately 1.2 million Suffolk County residents. Various of SCWA's wells have been contaminated by AFFF manufactured, marketed, supplied, and/or sold by Defendants.

9.      Defendants knew or should have known that PFOS and PFOA are highly soluble in water, extremely mobile, persistent, and very likely to contaminate drinking water wells and present significant risks to human health and welfare if released in the environment.

10.     Nonetheless, Defendants manufactured, marketed, and/or sold AFFF with the knowledge that PFOA and/or PFOS would be released into the environment in firefighting training and rescue exercises and in firefighting emergencies.

11.     SCWA seeks to recover compensatory damages and all other remedies, including but not limited to all necessary funds to reimburse the Authority for the costs of treating contaminated water to remove Defendants' products from its drinking water wells that have been, and continued to be, contaminated by PFOA and/or PFOS, and all associated costs, and to

ensure that the parties responsible for the drinking water contamination bear this expense, rather than the Authority and its ratepayers.

## II.  Parties

12.  **Plaintiff Suffolk County Water Authority** is a public drinking water provider under the New York Public Authorities Law, Article 5, Title 4 (Sections 1074–1092). Operating as a public benefit corporation since 1951, the Authority has grown to become one of the largest groundwater suppliers in the nation, serving approximately 1.2 million customers. The Public Authorities Law provides that SCWA, in carrying out its powers, purposes, and duties, acts in all respects for the benefit of the people of the County of Suffolk and State of New York, for the improvement of their health, welfare, and prosperity.

13.  **Defendant 3M Company** ("3M") is a Delaware corporation with its principal place of business in St. Paul, Minnesota. 3M does business throughout the United States, including conducting business in New York. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

14.  **Defendant Tyco Fire Products, LP** ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware, having its principal place of business at One Stanton Street, Marinette, Wisconsin. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFCs.

15.     **Defendant Chemguard Inc.** ("Chemguard") is a Wisconsin corporation with its principal place of business in Marinette, Wisconsin. At all times relevant, Chemguard manufactured, marketed, promoted, distributed, and/or sold AFFF that contained PFOA, PFOS, and other toxic substances.

16.     **Defendant Buckeye Fire Equipment Company** ("Buckeye Fire") is a North Carolina corporation with its principal place of business in Kings Mountain, North Carolina. At all times relevant, Buckeye Fire manufactured, marketed, promoted, distributed, and/or sold AFFF that contained PFOA, PFOS, and other toxic substances.

17.     **Defendant National Foam, Inc**., also known as Chubb National Foam (collectively "National Foam"), is a Delaware corporation with its principal place of business in West Chester, Pennsylvania. At all times relevant, National Foam manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFCs.

## III.    Jurisdiction and Venue

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

19.     This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in New York or otherwise intentionally avails itself of the New York market either through the distribution or sale of AFFF products in the State of New York so as to render the exercise of jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events, omissions, and harms that are the basis of Plaintiff's claims occurred in substantial part in this

judicial district.

## IV. Factual Allegations

### A. PFOA and PFOS, Their Chemical Characteristics, and Risk in Groundwater

21.     Poly- and perfluroalkyl substances (collectively "PFAS compounds") are terms used to describe a group of organic flurorinated alkanes. PFAS compounds have been used for decades to produce household and commercial products that are heat resistant, stain resistant, long lasting, and water and oil repellant.

22.     There are six long-chain PFAS compounds, which are divided into two sub-categories: (1) long-chain perfluoraoalkyl carboxylic acids (PFCAs) like PFOA, and (2) perfluoroalkane sulfonates (PFSAs), including perfluorohexane sulfonate (PFHxS) and PFOS. PFOS and PFOA compounds are the most toxic manmade chemicals of the PFAS family.

23.     PFOS and PFOA are characterized by a carbon-fluorine ("C-F") bond that is one of the strongest chemical bonds that occurs. PFOS and PFOAs are extremely persistent in the environment and in the human body, and have the potential to bioaccumulate and biomagnify in wildlife. Bioaccumulation appears to be related to the length of the C-F chain; as the size of the chain increases, the compound becomes more bioaccumulative.

24.     PFOS and PFOA have unique characteristics that cause extensive and persistent environmental contamination. Specifically, they are (1) mobile—that is, because they do not adsorb (stick) to soil particles, they are readily transported through the soil and into groundwater where they can migrate long distances; and (2) persistent—that is, they do not readily biodegrade or chemically degrade in the environment or in conventional treatment systems for drinking water. In short, once PFOS and/or PFOA are applied, discharged, disposed of, or otherwise released onto land, those compounds migrate through the subsurface and into groundwater, resist

natural degradation, and are difficult and costly to remove from water.

25. PFOA and PFOS contamination presents a significant threat to public health and welfare. PFOA is readily absorbed in the body after consumption or inhalation, and it accumulates primarily in the blood stream, kidney, and liver. Studies have shown that exposure to fluorochemicals that contain eight carbons or more ("C8"), such as PFOS and PFOA, may cause testicular cancer, kidney cancer, and liver damage in adults, as well as developmental effects to fetuses during pregnancy or to breast-fed infants, including low birth weight, accelerated puberty, and skeletal variations. There have also been studies linking C8s with autoimmune and endocrine disorders, elevated cholesterol, increased liver enzymes, decreased vaccination response, thyroid disease, and pregnancy-induced hypertension and preeclampsia (a serious pregnancy complication). These injuries may arise within months or years after exposure to PFOS or PFOA.

26. Under the U.S. Environmental Protection Agency's ("EPA") *Guidelines for Carcinogen Risk Assessment*, there is "Suggestive Evidence of Carcinogenic Potential" for PFOS and PFOA in humans.[1]

27. PFOA enters the environment from industrial facilities that manufacture PFOA or use PFOA to produce other products. It may also enter the environment when released from PFOA-containing consumer and commercial products during their use and disposal.

**B.      Defendants' Production of PFOA/PFOS and Commercialization of AFFF**

28. 3M began producing PFOA as part of a process called electrochemical fluorination in 1947. This process results in a product that contains and/or breaks down into

---

[1] U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, <u>Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)</u> (May 2016), https://www.epa.gov/sites/production/files/2016-05/documents/pfoa_health_advisory_final-plain.pdf.

compounds containing PFOA and/or PFOS.

29.     For most of the past 30 years, the primary manufacturer of PFOS and PFOA has been 3M, through its supply of AFFF.

30.     In the 1960s, 3M and the U.S. Navy began developing Class B AFFF to be used at airports and military bases for firefighting and explosion drills. AFFF was created to extinguish Class B fires, which are fueled by flammable liquid, and particularly difficult to fight using traditional methods of extinguishing fires. Class B fires cannot be safely extinguished with water.

31.     AFFFs are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, a solution forms producing aqueous film that spreads across the surface of a hydrocarbon fuel. This film formation feature is what provides the fire extinguishment.

32.     After its creation in the 1960s and entrance into the commercial market, AFFF was utilized by the Department of Defense and the Air Force to extinguish fuel-based fires during routine military drills. AFFF was also used in hundreds of airports and Air Force bases across the country.

33.     Manufacturers other than 3M used a process called telomerization to produce fluorosurfactants contained in their firefighting foams. Telomer-based foams do not contain or degrade into PFOS, and are not made with PFOA, but may contain trace levels as a contaminant of the manufacturing process. These telomere-based foams contain other PFAS, which have been detected in SCWA wells south of the Francis S. Gabreski Airport. Discharges occurred at various locations, at various times and in various amounts. Many of SCWA's wells have been, and continue to be, contaminated in varying amounts over time, causing Plaintiff significant injury

and damage.

### C. Defendants' Knowledge of Threats Posed by PFOA and PFOS

34.     Defendants sold AFFF that was used at Francis S. Gabreski Airport (the "Airport"), formerly known as Suffolk County Airport, and the Gabreski Air National Guard Base, formerly the Suffolk County Army Air Field.

35.     The New York Air National Guard (NYANG) leases runways, hangars, and other facilities on the southwest side of the Airport and has utilized a 0.5-acre "Fire Training Area" for decades. The Air Force, NYANG, and private agencies have long conducted exercises, including firefighting and explosion training, where AFFF was sprayed directly on the ground, allowing PFOS/PFOA to travel to the surrounding groundwater.

36.     At various times dating back to the 1970s, thousands of gallons of AFFF concentrate have been stored and used at the Airport, leading to widespread contamination of local groundwater and Plaintiff's wells.

37.     Throughout the time AFFF containing PFOS and PFOA was used at the Airport, the instructions, warning labels, and material safety data sheets that were provided with the AFFF by the Defendants did not fully identify and notify customers, users, regulators, public water suppliers, or the public concerning the health and environmental hazards of AFFF, which Defendants knew or should have known existed.

38.     For decades, AFFF foam users did not know of PFOA and/or PFOS existence in AFFF, and used AFFF foam as instructed by spraying AFFF foam directly on the ground during fire training exercises. The use of AFFF to extinguish fires allowed PFOS and PFOA to escape into the ground and migrate to surrounding public and private drinking wells.

39.     Defendants had known of these health and environmental hazards for years.

40.     3M began conducting medical studies on PFOA in the early 1960s. In 1981, 3M researchers found that ingestion of PFOA caused birth defects in rats, but continued manufacturing the chemical and failed to disclose the study results.

41.     By the mid-1980s, 3M began a major program to review the handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

42.     By at least 1993, defendants were aware that PFOA was linked to increased cancer rates in PFOA-exposed humans.

43.     On May 16, 2000, 3M announced that it would phase out production of PFOS and PFOA. On the day of 3M's phase out announcement, an EPA internal memo stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term… [PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity property to an extraordinary degree."[2]

44.     In response to pressure from the EPA, 3M began to phase out production of PFOS and PFOA products in 2000.[3] On May 16, 2000, 3M issued a news release falsely asserting that "our products are safe," citing the company's "principles of responsible environmental management" as the reason to cease production.[4]

45.     In 2002, 3M completed its phase out of PFOS-based AFFF.

---

[2] EPA internal memo, "Phaseout of PFOS"( May 16, 2000) *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf.

[3] *See* EPA Press Statement re: Phaseout of PFOS (May 16, 2000), *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf; *see also* 3M Sustainability, *Policies & Reports: 3M and Fluorochemicals*, *available at* http://www.3m.com/3M/en_US/sustainability-us/policies-reports/3m-and-fluorochemicals.

[4] 3M press release, "3M Phasing Out Some Of Its Specialty Materials" (May 16, 2000), *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf.

46.     A timeline summary of 3M's production and knowledge of the associated risks of PFC-based AFFF is reflected in the following figure:



47.     In May 2016, the EPA issued a non-mandatory lifetime health advisory of 70 parts per trillion ("ppt") for long-term exposure to PFOA and PFOS in drinking water.[5]

**D.     PFOS and PFOA Detected in the Affected Areas**

48.     The communities of Westhampton, Westhampton Beach, Quogue, North Amityville, Bohemia, Stony Brook, and Hauppauge, Greenport, South Setauket, and Yaphank are all located in Suffolk County (collectively, the "Affected Areas"). These communities are located nearby and downgradient of the Airport, Gabreski Air National Guard Base (which is part of the Airport), Suffolk County Firematics Training Facility, and Hawkeye Energy Plant. Additionally, these communities receive their water from the SCWA-designated pump stations and wells closest to their locations.

49.     The PFOS and PFOA levels found in SCWA wells are the result of AFFF usage.

---

[5] EPA health advisory, "Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)" (May 2016), *available at* https://www.epa.gov/sites/production/files/2016-05/documents/pfoa_health_advisory_final_508.pdf.

50. Plaintiff operates wells contaminated with PFOA and/or PFOS located nearby and downgradient of the Airport and Gabreski Air National Guard Base. Additionally, two wells, Wells S-117454 and S-117861, are located in Greenport near Hawkeye Energy Plant.

51. The Hawkeye Energy Plant, located in Greenport, likely additionally contributed to PFOA and PFOS contamination through its use of foaming fire extinguishers, similar to or the same as AFFF. The Hawkeye Energy Plant is primarily a kerosene-fired plant, and AFFF is the preferred means of oil firefighting.

52. At no time did SCWA purchase, acquire, own, obtain, or otherwise bring to, use or dispose of AFFF.

53. In early 2016, New York urged the U.S. Environmental Protection Agency ("EPA") to acknowledge that PFOA contamination is a national problem that requires federal standards.[6]

54. In February 2016, Governor Cuomo created a Water Quality Rapid Response Team ("WQRRT"), led by the New York State Department of Environmental Conservation ("DEC") and Department of Health (DOH), to quickly investigate water contamination reports across New York and take corrective action to address these contamination issues. This team is seen as a national model to research, identify and quickly address water contamination in communities. The WQRRT has been working to identify and address drinking water issues across the state, including sampling of public water and private wells around 25 facilities suspected or known to have used PFCs.

55. In April 2016, New York became the first state in the nation to regulate PFOA as

---

[6] *New York State Department of Environmental Conservation*, Chemical and Pollution Control, Perfluorinated Compounds (PFCs), *available at* http://www.dec.ny.gov/chemical/108831.html.

a hazardous substance. The regulation requires proper storage and limited release to the environment, and enabled the State to use its legal authority and resources of the State Superfund program to advance investigations and cleanups of impacted sites. The Final Rule for PFOA and PFOS became effective on March 3, 2017.

56.     In July 2016, the DEC gathered groundwater and soil samples at the Airport and confirmed that the Gabreski Air National Guard Base is the primary source of PFOA and PFOS contamination in many of SCWA's wells.

57.     Later that month, Suffolk County issued a press release entitled "Water Quality Advisory for Private-Well Owners in the Areas of Westhampton."[7] In this press release, Suffolk County announced that PFCs were detected in public and private supply wells in the vicinity of Gabreski Air National Guard Base and the Airport.

58.     On September 12, 2016, the DEC designated the Gabreski Air National Guard Base as a Superfund site. The DEC found that the drinking water wells within the vicinity of the Airport contained concentrations of PFOS and PFOA that exceeded the EPA's drinking water health advisory for PFOS and PFOA. The DEC called for action to be taken to reduce human exposure to PFOS and PFOA in the water supplies.

59.     On April 27, 2017, the DEC designated the Suffolk County Firematics Training Facility in Yaphank a Class 2 Superfund Site.

60.     On April 26, 2017, Governor Cuomo signed the Clean Water Infrastructure Act, a $2.5 billion investment in drinking water infrastructure, clean water infrastructure, and water

---

[7] Press Release, Suffolk County Gov't, Water Quality Advisory for Private-Well Owners in Areas of Westhampton, (Jul. 29, 2016), *available at* http://www.suffolkcountyny.gov/SuffolkCountyPressReleases/tabid/1418/itemid/5177/amid/2954/water-quality-advisory-for-private-well-owners-in-areas-of-westhampton.aspx.

quality protection across New York. The legislation requires all New York-based water systems to test for PFOA and PFOS contamination.[8]

61.    In September 2017, Governor Cuomo announced his appointees for a 12-member Drinking Water Quality Council tasked with ensuring all New Yorkers have access to safe and clean drinking water. The Council's initial responsibility is to recommend enforceable Maximum Contaminant Levels ("MCLs") for PFOA and PFOS as priority emerging New York contaminants that remain unregulated by the federal government.[9]

**E.    Treatment of PFOA and PFOS**

62.    The most viable technologies to remove PFAS compounds from drinking water are granular activated carbon treatment ("GAC"), reverse osmosis, and anion exchange. PFAS compounds are often co-located with other contaminants amenable for removal by GAC for treatment.

63.    SCWA has suffered injury and damages in various of its wells from the presence of PFAS in the wells.

**V.    Causes of Action**

**FIRST CAUSE OF ACTION**
**Strict Products Liability for Defective Design**

64.    Plaintiff realleges each of the preceding paragraphs and incorporates each such paragraph as if fully stated herein.

---

[8] Press Release, New York State, Governor Cuomo Signs Legislation Investing $2.5 Billion in Clean Water Infrastructure and Water Quality Protection (Apr. 26, 2017), https://www.governor.ny.gov/news/governor-cuomo-signs-legislation-investing-25-billion-clean-water-infrastructure-and-water.
[9] Press Release, New York State, Cuomo Announces Appointees to Drinking Water Quality Council to Safeguard New York Drinking Water Supplies, (Sep. 22, 2017), *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-appointees-drinking-water-quality-council-safeguard-new-york-drinking.

65. As commercial designers, manufacturers, distributors, suppliers, sellers, and/or marketers of AFFF containing PFOA and PFOS, Defendants had a strict duty not to place into the stream of commerce a product that is unreasonably dangerous.

66. Defendants knew that third parties would purchase AFFF containing PFOA and PFOS and use it without inspection for defects.

67. AFFF containing PFOA/PFOS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto lands and/or water in the vicinity of Plaintiff's drinking water production wells. Such discharges occurred at various locations, at various times, and in various amounts.

68. The AFFF containing PFOA/PFOS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

69. Defendants knew or reasonably should have known that the use of AFFF containing PFOA and PFOS in its intended manner would result in the spillage, discharge, disposal, or release of AFFF onto land or into water.

70. The AFFF containing PFOA and PFOS used in the vicinity of Plaintiff's drinking water production wells was defective in design and unreasonably dangerous because, among other things:

   a. PFOA and PFOS causes extensive and persistent groundwater contamination when it, or products containing it, are used in their foreseeable and intended manner.

   b. PFOA and PFOS contamination in drinking water poses significant threats to public health and welfare.

14

        c.   Defendants failed to conduct and/or failed to disclose reasonable,

           appropriate, or adequate scientific studies to evaluate the environmental

           fate and transport and potential human health effects of PFOA and PFOS.

71.      At all times relevant to this action, AFFF containing PFOA and PFOS was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the foreseeable risk of harm to public health and welfare posed by PFOA and PFOS outweighed the cost to Defendants of reducing or eliminating such risk.

72.      Defendants knew or should have known about feasible alternatives to producing AFFF without the use of PFCs, and the omission of such alternative designs rendered AFFF not reasonably safe.

73.      As a direct and proximate result of the defects previously described many of Plaintiff's wells have been, and continue to be, contaminated with PFOA/PFOS in varying amounts over time, causing Plaintiff significant injury and damage.

74.      As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFOA/PFOS contamination of its wells in an amount to be proved at trial.

75.      Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of drinking water wells. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard of the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff

requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

76.     Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

## SECOND CAUSE OF ACTION
### Strict Products Liability for Failure to Warn

77.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

78.     As commercial distributors, sellers, manufacturers, suppliers, marketers, and/or designers of AFFF, Defendants had a strict duty to warn against latent dangers resulting from foreseeable uses of the product that Defendants knew or should have known about.

79.     Defendants knew that third parties would purchase AFFF containing PFOA and PFOS and use it without inspection for defects.

80.     AFFF containing PFOA/PFOS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties was applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the lands and/or water in the vicinity of Plaintiff's drinking water production wells.

81.     The AFFF containing PFOA and PFOS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

82.     Defendants knew or should have known that the use of AFFF containing PFOA/PFOS in its intended manner would result in the discharge, disposal, or release of PFOA/PFOS onto land or into water.

83.     The AFFF containing PFOA and PFOS used in the vicinity of Plaintiff's drinking water production wells was defective in design and unreasonably dangerous products for the reasons set forth in Paragraphs 72 and 73 above.

84.     Despite the known and/or reasonably foreseeable hazards to human health and welfare associated with the use of AFFF containing PFOA and PFOS in the vicinity of Plaintiff's drinking water production wells, including contamination of public drinking water wells with PFOA/PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

85.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their AFFF products containing PFOA/PFOS or otherwise.

86.     As a direct and proximate result of Defendants' failure to warn of the hazards posed by disposal or release of AFFF containing PFOA/PFOS in the vicinity of subterranean public drinking water wells that were, or reasonably should have been, known to them, PFOA and/or PFOS contaminates many of Plaintiff's wells in varying amounts.

87.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFOA and/or PFOS contamination of its wells in an amount to be proved at trial.

88.     Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of drinking water wells. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that

17

conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

89.     Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

### THIRD CAUSE OF ACTION
### Negligence

90.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

91.     As commercial distributers, sellers, manufacturers, suppliers, marketers, and/or designers, Defendants owed a duty of care to Plaintiff not to place into the stream of commerce a product, AFFF, that was in a defective condition and unreasonably dangerous to drinking water wells in the Affected Areas.

92.     Defendants breached this duty by negligently designing, formulating, manufacturing, distributing, selling, supplying, and/or marketing such unreasonably dangerous products into the stream of commerce, including in Suffolk County, even when they knew or should have known of the dangers PFOA and PFOS posed to public drinking water wells.

93.     Among other things, Defendants breached this duty when they manufactured, marketed, distributed, supplied, and sold AFFF even though they knew or should have known of the dangers that PFOA and PFOS posed to drinking water wells. Defendants should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS compounds, like PFOS and PFOA, would result in the contamination of the public water wells in the Affected Areas as a result of the close proximity of these areas to Gabreski Air National Guard Base, the Airport, and Hawkeye Energy Plant.

94. Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health.

95. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFOA and PFOS contamination of its wells in an amount to be proved at trial.

96. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of drinking water wells. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

97. Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

## FOURTH CAUSE OF ACTION
### Public Nuisance

98. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

99. Plaintiff provides drinking water from its wells in the Affected Areas to a large number of Suffolk County residents and businesses for drinking, bathing, cleaning, washing, and other uses.

100. Because Plaintiff is a public entity, the water it provides to these Suffolk County residents and businesses is a public or commonly held resource. Members of the public have a

right to have their water remain clean and potable, free of contamination by toxic man-made compounds.

101.    Defendants' acts and omissions, including their manufacture, sale, supply, marketing, and defective design of, and/or failure to warn regarding PFOA and/or PFOS in AFFF contaminated such wells, rendering water served from them unfit for human consumption and a public health hazard.

102.    Consequently, Defendants substantially interfered with and caused damage to a public or common resource that endangered public property, as well as the health, safety, and comfort of a considerable number of persons. Such action creates, contributes to, or maintains a public nuisance.

103.    As an owner of water production wells and purveyor of drinking water, Plaintiff suffers injuries different in kind from the community at large because it relies entirely upon its drinking water production wells for its public service functions.

104.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of drinking water wells. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

105.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

## FIFTH CAUSE OF ACTION
## Private Nuisance

106.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

107.     Plaintiff is the owner of land, easements, and water rights that permit it to extract groundwater for use in its wells to provide drinking water to its customers.

108.     Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in substantial contamination of Plaintiff's wells by PFOA and PFOS, possible human carcinogens that cause adverse human health effects and render water undrinkable.

109.     Defendants' manufacture, distribution, sale, supply, and marketing of AFFF containing PFOA/PFOS was unreasonable because Defendants had knowledge of PFOA and PFOS's unique and dangerous chemical properties and knew that contamination of public drinking water wells was substantially certain to occur, but failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

110.     The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interferes with Plaintiff's property rights to appropriate, use, and enjoy water from its wells in the Affected Area.

111.     Each defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

112.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFOA and PFOS contamination of its wells in an amount to be proved at trial.

113.     Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of

drinking water wells. Defendants committed each of the above-described acts and omission

knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to

promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that

conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff

requests an award of punitive damages in an amount sufficient to punish these Defendants and

that fairly reflects the aggravating circumstances alleged herein.

114.    Defendants are jointly and severally liable for all such damages, and Plaintiff is

entitled to recover all such damages and other relief as set forth below.

## SIXTH CAUSE OF ACTION
### Trespass

115.    Plaintiff realleges and reaffirms each and every allegation set forth in all

preceding paragraphs as if fully stated herein.

116.    Plaintiff owns and possesses its drinking water production system, including

drinking water production wells that extract groundwater in Suffolk County, New York.

117.    Plaintiff actually and actively exercises its rights to appropriate and use

groundwater drawn from its wells.

118.    Plaintiff did not give any Defendant permission to cause PFOA or PFOS to enter

its groundwater wells.

119.    Defendants knew or reasonably should have known that:

    a.  PFOA and PFOS have a propensity to infiltrate groundwater aquifers

        when released to the environment;

    b.  they are mobile and persistent groundwater contaminants capable of

        moving substantial distances within aquifers;

    c.  they are toxic to human health;

d. and they are therefore hazardous to drinking water systems and human health and welfare.

120. Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFOA and PFOS, which Defendants knew or reasonably should have known would virtually certainly be discharged and release toxic PFOA and PFOS into the ground and intrude upon, contaminate, and damage Plaintiff's possessory interest.

121. Defendants' willful conduct directly resulted in the placement of its product, AFFF, on and in property owned by SCWA without permission or right of entry.

122. Each Defendant is a substantial factor in bringing about the contamination of Plaintiff's wells, and each Defendant aided and abetted the trespasses and is jointly responsible for the injuries and damage caused to Plaintiff.

123. As a direct and proximate result of Defendants' acts and omissions resulting in PFOA and PFOS entering Plaintiff's drinking water wells, Plaintiff sustained actual injuries and damages related to the PFOA and/or PFOS contamination of its wells in an amount to be proved at trial.

124. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFOA and PFOS contamination of drinking water wells. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

125.     Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

## VI.     Prayer for Relief

Plaintiff Suffolk County Water Authority prays for judgment against Defendants, jointly and severally, awarding Plaintiff:

a.     Compensatory damages in an amount according to proof.

b.     Punitive damages in an amount to be determined at trial;

c.     Injunctive and equitable relief, including in the form of a fund to abate the nuisance and trespass;

d.     All appropriate declaratory relief;

e.     Plaintiff's costs in prosecuting this action, including reasonable attorneys' fees, court costs, expert fees, and other expenses of litigation;

f.     Pre-judgment and post-judgment interest; and

g.     All other relief this Court deems just, proper, and equitable.

/ / /

## VII. Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury of all claims asserted in this Complaint.

Dated: November 30, 2017      Respectfully submitted,

_____

Scott Martin

VICTOR M. SHER (*pro hac vice* application to be submitted)
vic@sheredling.com
MATTHEW K. EDLING
matt@sheredling.com
KATIE H. JONES (*pro hac vice* application to be submitted)
katie@sheredling.com
**SHER EDLING LLP**
100 Montgomery St. Suite 1410
San Francisco, CA 94104
(628) 231-2500

SCOTT MARTIN
smartin@hausfeld.com
JEANETTE BAYOUMI
jbayoumi@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
(646) 357-1100

RICHARD S. LEWIS (*pro hac vice* application to be submitted)
rlewis@hausfeld.com
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 540-7200

KATIE R. BERAN (*pro hac vice* application to be submitted)
kberan@hausfeld.com

**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
(215) 985-3270

LEW MELTZER
lmeltzer@meltzerlippe.com
THOMAS J. MCGOWAN
tmcgowan@meltzerlippe.com
LORETTA M. GASTWIRTH
lgastwirth@meltzerlippe.com
**MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP**
190 Willis Avenue
Mineola, NY 11501
(516) 747-0300

*Attorneys for Plaintiff
Suffolk County Water Authority*